UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASALI M. RICHARDSON, | Case No. 1:21-cv-00070-BAK (GSA) (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| v. | |
| ALLISON, et al., | **(ECF No. 1)** |
| Defendants. | |
| | **FOURTEEN (14) DAY DEADLINE** |
| | Clerk of Court to assign a district judge. |

Plaintiff Asali M. Richardson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  Plaintiff filed a complaint alleging that Defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment by demonstrating medical indifference to Plaintiff's exposure to and contraction of COVID-19 ("COVID").  (ECF No. 1.)  In particular, Plaintiff claims that Defendants ignored her CDCR form 602 inmate appeals submitted in order to avoid exposure to COVID.  Additionally, Plaintiff asserts that Defendants violated her rights by placing her in a "high risk" medical category.  After careful consideration of Plaintiff's allegations, the Court recommends dismissal of Plaintiff's complaint for failure to state a claim on which relief can be granted.

///

///

## I. SCREENING REQUIREMENT

Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff, *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks and citation omitted), and

2

1  courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572
2  F.3d 677, 681 (9th Cir. 2009) (*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049,
3  1064 (9th Cir. 2008)).  The mere possibility of misconduct and facts merely consistent with
4  liability is insufficient to state a cognizable claim.  *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret*
5  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

6  **B.  Linkage and Causation**

7  Prisoners may bring claims under 42 U.S.C. § 1983 for violations of constitutional or
8  other federal rights by persons acting "under color of state law."  To state a claim under section
9  1983, a plaintiff must show a causal connection or link between the actions of the defendants and
10 the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362,
11 373–75 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation
12 of a constitutional right, within the meaning of section 1983, if he does an affirmative act,
13 participates in another's affirmative acts, or omits to perform an act which he is legally required
14 to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,
15 743 (9th Cir. 1978) (citation omitted).

16 **III.   PLAINTIFF'S ALLEGATIONS**

17 At the time of the alleged violations, Plaintiff was housed at California Department of
18 Corrections and Rehabilitation ("CDCR"), Central California Women's Facility ("CCWF").[1]
19 She names as defendants Allison, Secretary of CDCR ("Secretary"); Warden Pallares
20 ("Warden"); Mitchell, Chief Medical Officer ("CMO"); Dotson, Assistant Warden Custody
21 ("AW Custody"); De La Cruz, Assistant Warden Housing; and CCWF Chief Executive Officer
22 ("CEO").  Plaintiff claim that she was exposed to and contracted COVID, she was improperly
23 placed into a "high risk" medical category, and she did not receive medical treatment for her
24 heart issues or mental health services.

25 According to Plaintiff, the Secretary provided nine non-CDC-approved masks in a ten-
26 month period, and the Secretary and Warden told her to re-use N95 masks for seven days after a
27 COVID breakout affecting over 700 inmates housed at CCWF.  The Warden detained Plaintiff in
28

---

[1] Plaintiff refers to CCWF as "CDCR/CCWF."

her assigned cell for days without natural air.  Additionally, the Warden and CMO failed to provide cleaning agents and supplies such as food-grade Saniguard surface sanitizer, liquid bleach, Pine Sol for "24 hours of a day in cell for surfaces"; and disposable gloves, hand sanitizer, and machine-washed clothes.

Plaintiff alleges that the Warden, AW Custody, and AW Housing transferred contagious inmates from McFarland Community Correctional Facility into Plaintiff's "living areas," and rooms were shared between infected and non-infected inmates.  The CMO did not provide weekly updates on the number of infections within CCWF to Plaintiff or the general population.  Plaintiff complains that the Assistant Wardens did not allow her access to the dayroom and telephone to communicate with family, friends, and support members.

On January 13, 2021, Plaintiff claims she was relocated to a "COVID-19 infested environment" without her consent, with inhumane living conditions, no power, no self-controlled lights, pest contamination, and trash in rooms left for six- to eight-hour periods.  Plaintiff states that she had been in a "medium risk" category was then placed in a "high risk" medical category.  Plaintiff alleges that she contracted COVID and she was concerned about infecting others.[2]

Aside from her concerns about contracting and spreading COVID, Plaintiff alleges that CCWF deliberately ignored her existing medical conditions.  In March 2020, Plaintiff was diagnosed with heart issues, for which she has not received treatment.  Plaintiff also suffered from "spondylithesis,"[3] asthma, COPD, "arthopy,"[4] neuropathy, obesity, sciatica, loss of bladder control, and loss of sight in her right eye.  Additionally, Plaintiff complains there were no mental health services.

Plaintiff filed this action alleging that Defendants violated her Eighth Amendment rights against cruel and unusual punishment, first by "directly ignoring all CDCR 602 grievances [she] submitted to avoid direct exposure" to COVID.  In her second claim, Plaintiff argues that Defendants violated her "right to 'avoid' being placed into 'high risk' medical category," and

---

[2] Attached to Plaintiff's complaint are negative COVID test results from samples taken on December 19 and 23, 2020.  (ECF No. 7–8.)  Plaintiff does not submit a positive test result between those samples and Plaintiff's filing of the complaint on January 19, 2021.
[3] The Court construes this as "spondylolisthesis."
[4] The Court construes this as "arthropathy."

4

they demonstrated medical indifference to her concerns about contracting COVID. Plaintiff also complains that she received no medical treatment for her heart issues or mental health services.

As relief, Plaintiff generally requests that the Court remedy CDCR/CCWF's Eighth Amendment violations. Specifically, Plaintiff seeks an audit of the CDCR 602 grievances she filed between August 2020 to January 15, 2021, and the medical CDCR. Due to Plaintiff's "substantial risk of [dying]," she seeks protection from being re-infected with COVID. Plaintiff requests to be released from CCWF, placed into residential treatment, or allowed to live with immediate family.

## IV.   DISCUSSION

### A.   42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012).

Federal law allows for two types of actions seeking relief on complaints related to imprisonment: petitions for habeas corpus and complaints under 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). Under *Heck v. Humphrey*, 512 U.S. 477 (1994), "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement'" but rather must seek habeas corpus relief. *Cervantes v. Pratt*, 224 F. App'x 697, 700 (9th Cir. 2007) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005)). When the relief a plaintiff seeks "is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411

U.S. 475, 500 (1973); *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003). A civil rights action under 42 U.S.C. § 1983 is the proper remedy for a constitutional challenge to the conditions of imprisonment. *Preiser*, 411 U.S. at 499; *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991).

Where a prisoner's claim "would not necessarily lead to his immediate or earlier release from confinement," the claim "does not fall with 'the core of habeas corpus.'" *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (citing *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011)). "Section 1983 remains available for procedural challenges where success *would not necessarily* spell immediate release." *Wilkinson v. Dotson*, 544 U.S. 74 (2005) (alteration in original) (citing *Wolff v. McDonnell,* 418 U.S. 539 (1974)). In the context of the COVID-19 pandemic, "when a prisoner claims his detention is unconstitutional in light of the dangers presented by COVID-19 combined with the petitioner's particular circumstances and that petitioner further contends there are 'no set of conditions' that could possibly make his custody constitutional, a petition for habeas corpus is the proper vehicle for challenging that custody." *Sekerke v. Gore*, No. 20-cv-1998 JLS (MSB), 2021 WL 3604169, at *7 (S.D. Cal. Aug. 13, 2021).

In this instance, the first page of the complaint indicates that Plaintiff attempted to file this action both as a section 1983 action *and* a habeas corpus petition. Plaintiff alleges that she was denied adequate hygiene and cleaning supplies, and the prison placed infected and non-infected individuals in shared living spaces. Plaintiff also objects being categorized as a "high risk" individual, which she considers an effort to "silence" her risk factors. Even though Plaintiff has requested early release as a form of relief, her allegations concern the conditions of her confinement. Accordingly, this action is appropriately brought as a section 1983 complaint. *See Dilbert v. Fisher*, No. 1:20-cv-01835-JLT (HC), 2021 WL 540379 (E.D. Cal. Jan. 11, 2021); *Bowman v. California*, No. EDCV 19-00184 RGK (RAO), 2019 WL 4740538, at *1–2 (C.D. Cal. June 26, 2019).

**B.     Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319

(1986); *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Prison officials have a duty to ensure prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citation omitted). This includes the duty to protect inmates from communicable diseases. *Edwards v. Pollard*, No. 3:21-cv-1157-DMS-WVG, 2021 WL 4776328, at *2 (S.D. Cal. Oct. 13, 2021) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease")).

A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The deliberate indifference standard involves both an objective and a subjective prong. *Id.* First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A deprivation is sufficiently serious if a prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). For a claim based on a failure to prevent harm, the inmate must show that the conditions of confinement pose a "substantial risk of serious harm." *See Farmer*, 511 U.S. at 824 (citing *Helling*, 509 U.S. at 35).

The second prong of this test is subjective and requires the prison official to have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 302–04). In cases challenging conditions of confinement, the plaintiff must show that the prison official acted with "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 302–03). "Deliberate indifference" entails something more than negligence but less than acts or omissions intended to cause harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835 (following *Estelle*, 429 U.S. at 104). In *Farmer*, the Supreme Court adopted the following standard:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837. The Supreme Court likened this standard for "deliberate indifference" to "subjective recklessness" as used in criminal law. (*See id.* at 839–40.)

To prove knowledge of the risk, the prisoner may rely on circumstantial evidence, and the very obviousness of the risk may be sufficient to establish knowledge. *See id.* at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Even if a prison official should have been aware of the risk but was not, there is no Eighth Amendment violation, no matter how severe the risk. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (internal quotation and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. In addition, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably." *Id.* at 844.

In determining whether a constitutional violation has occurred, the court must consider the circumstances, nature, and duration of the alleged deprivation. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). Long-term unsanitary conditions violate the Eighth Amendment. *See, e.g.*, *Hearns*, 413 F.3d at 1041–42. However, unsanitary conditions for a short period of time may not violate the Eighth Amendment. *See Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *op. am. on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. A prison official may be held liable under the Eighth Amendment for denying humane conditions of

confinement only if (s)he knows that inmates face a substantial risk of harm, disregards that risk by failing to take reasonable measures to abate it, and exposes a prisoner to a substantial risk of serious damage to her future health. *Id.* at 837–45.

### B.      Communicable Diseases

Individuals in custody have a right to protection from heightened exposure to a serious communicable disease. *See, e.g.*, *Helling*, 509 U.S. at 33 (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment); *see also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases, such as Hepatitis and venereal disease); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); *Trevizo v. Webster*, No. CV 17-5868-MWF (KS), 2018 WL 5917858, at *4 (C.D. Cal. Sept. 6, 2018) ("It is well accepted that such 'substantial risks of harm' include 'exposure of inmates to a serious, communicable disease.'") (citing *Helling*, 509 U.S. at 33).

### C.      COVID-19

Prisoners have a constitutional right to be protected against a heightened exposure to serious, easily communicated diseases, and this clearly established right extends to protection from COVID. *Jones v. Sherman*, No. 1:21-cv-01093-DAD-EPG PC, 2022 WL 783452, at *10 (E.D. Cal. Mar. 11, 2022). "The COVID-19 pandemic is 'unprecedented,' . . . and no one questions that it poses a substantial risk of serious harm to [prisoners]." *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) (*Coleman v. Newsom*, 455 F. Supp. 3d 926 (E.D. Cal. 2020)). The transmissibility of the coronavirus in conjunction with prison living conditions place prisoners at a substantial risk of suffering serious harm. *See Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 WL 2227636 (E.D. Cal. June 2, 2021). However, "this risk is not unique to prisoners. This is a global pandemic, effecting millions of individuals worldwide." *Burgess v. Newsom*, No. 1:21-cv-00077-SAB (PC), 2021 WL 4061611, at *4 (E.D. Cal. Sep. 7,

2021). In order to state a cognizable Eighth Amendment claim against defendants, a plaintiff must provide more than generalized allegations that they have not done enough to control the spread. *See Blackwell v. Covello*, No. 2:20-cv-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (citing *Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020)).

The Court liberally construes Plaintiff's complaint as asserting claims of medical indifference to her exposure to COVID, her heightened susceptibility to infection, and her contraction of the disease. COVID and the substantial risk of serious harm it poses satisfy the objective prong of the deliberate indifference standard. Plaintiff's allegations against the individual defendants do not, however, meet the subjective prong of the test for medical indifference.

The obviousness of the risks of COVID are sufficient to establish Defendants' knowledge the excessive risk to inmate health. Under the circumstances of this case, Plaintiff's allegations do not show that the individual defendants disregarded the risk to Plaintiff's health. Plaintiff was given masks to use, and her complaint is that the Secretary and Warden did not provide enough masks and was told to re-use the masks. The complaint indicates that Plaintiff was given sanitizing cleaners, but she complains that the Warden and CMO did not provide enough sanitizers or the types she preferred. Plaintiff also complains that the Warden, AW Custody, and AW Housing "transferred contagious inmates directly into [her] exposed living areas" from another facility, and rooms were shared between non-infected and infected inmates.[5] However, proximity to other inmates is an unavoidable condition of confinement, and the prisoners were tested for COVID. Plaintiff objects to her categorization as a high risk individual, though this reflects consideration of her existing medical conditions.

Plaintiff's other allegations likewise do not support her claims of deliberate indifference. Plaintiff complains that she did not receive weekly updates on the number of infections in the prison; she was unable to use the telephones; and her room lacked power and self-controlled

---

[5] The allegations are unclear whether Plaintiff actually shared a room with an infected individual.

lights and was unclean. Additionally, Plaintiff expresses that, as a carrier of COVID,[6] she is concerned about infecting others and becoming reinfected with COVID.

As the basis for her second claim, Plaintiff objects to placement from a "medium risk" to a "high risk" category. "Individuals deemed 'high risk' are considered to be at greater risk for morbidity and mortality should they contract COVID-19. They include people over age 65 who have chronic conditions, or those with respiratory illnesses such as asthma or chronic obstructive pulmonary disease (COPD)."[7] While Plaintiff suggests that categorizing her as a "high risk" individual as an effort to suppress her complaints, this designation indicates that prison officials did consider her pre-existing conditions and the heightened risk they pose.

These allegations, even when liberally construed, do not describe extreme deprivations, or inhumane conditions of confinement attributable to any named defendant. Instead, Plaintiff asserts generalized allegations that CDCR and CCWF officials have not done enough to control the spread of COVID. Under the circumstances, Plaintiff has failed to state an Eighth Amendment claim for medical indifference.

### D. Compassionate Release

To the extent that Plaintiff seeks compassionate release in light of her medical conditions and risk of exposure to COVID, the request is not properly before this Court. Under 18 U.S.C. § 3582(c)(1)(A), all motions for sentencing reductions, including motions for compassionate release, must be filed in the sentencing court. *See United States v. Ono*, 72 F.3d 101, 102 (9th Cir. 1995) (holding that a motion under section 3582(c) is a step in the criminal case that requires the sentencing court to reexamine the original sentence); *see also Bolden v. Ponce*, No. 1:20-cv-03870-JFW-MAA, 2020 WL 2097751, at *2 (C.D. Cal. May 1, 2020) (holding that the district court lacks authority to grant release under § 3582(c)(1)(A) based on conditions caused by COVID pandemic because petition was not filed in sentencing court). Because this Court is not the sentencing court, it cannot grant Plaintiff compassionate release.

### E. CDCR 602 Inmate Grievances

---

[6] Plaintiff alleges that she "has" COVID. However, Plaintiff attaches as exhibits to her complaint negative COVID test results from December 19 and 23, 2020. (ECF No. 1 at 7, 8.)

[7] Expedited Releases - COVID-19 Information (ca.gov), https://www.cdcr.ca.gov/covid19/expedited-releases/ (last visited May 2, 2022).

11

In her first claim, Plaintiff asserts that Defendants subjected her to cruel and unusual punishment by ignoring the CDCR 602 inmate appeals she submitted to avoid exposure to COVID.  However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of her inmate appeals.  Plaintiff does not have a constitutionally protected right to have her appeals accepted or processed.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993); *see also Wright v. Shannon*, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (holding plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment).  Denial or refusal to process a prison grievance is not a constitutional violation. *Rushdan v. Gear*, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018).  Therefore, the first claim of her complaint, that Defendants ignored her CDCR 602 grievances, fails to state a claim upon which relief may be granted.[8]

### F. Qualified Immunity

To the extent that Plaintiff seeks relief against CDCR or CCWF, any claims these entities are barred by the Eleventh Amendment.  The Eleventh Amendment prohibits federal courts from hearing a section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies such as CDCR, or individual prisons, absent "a waiver by the state or a valid congressional override . . . ."  *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999); *see Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted).  The State of California has not waived its Eleventh Amendment immunity for federal claims under section 1983.  *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

---

[8] Exhibits Plaintiff submitted with her complaint contradict her claim that Defendants ignored her CDCR 602 appeals.  (*See* Doc. No. 1 at 10–16.)

12

Therefore, Plaintiff cannot maintain an action against CDCR or CCWF.

**G.     Supervisory Liability**

In her first claim, Plaintiff alleges Defendants subjected her to cruel and unusual punishment by ignoring her CDCR 602 grievances regarding her exposure to COVID.  Plaintiff alleges that "[v]arious CDCR/CCWF Supervisory Officers never addressed full context.  Attempted to provide partial information in favor of their subordinates.  Issues of concern [stemming] from the same facts were not resolved, taken seriously, nor processed by any unbiased Supervisory Officials at CCWF."  (ECF No. 1 at 2.)

In a section 1983 action, a supervisor cannot be held vicariously liable for the actions of lower officials. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013).  A supervisor may be held liable under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *accord Lolli v. Cnty. of Orange,* 351 F.3d 410, 418 (9th Cir. 2003).  This causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) [their] conduct that showed a reckless or callous indifference to the rights of others." *Lemire*, 726 F.3d at 1075 (quoting *Cunningham v. Gates,* 229 F.3d 1271, 1292 (9th Cir. 2000)).

Because the processing of CDCR 602 inmate appeals does not give rise to a constitutional claim, Plaintiff cannot assert Eighth Amendment claims against the defendants in their supervisory roles.  Plaintiff alleges that defendants did not take her concerns seriously and that they were biased in their processing of Plaintiff's claims.  Plaintiff also names as a defendant the CEO of CCWF, but no allegations are directed at this defendant.  To the extent Plaintiff seeks to assert supervisory liability against the CEO, Plaintiff has failed to state a claim against the CEO as well.

**H.     Improper Joinder**

Plaintiff's complaint asserts claims that are not properly joined under Federal Rule of Civil Procedure 20(a). Rule 20(a) provides that all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). *See also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against unrelated defendants belong in different suits"). If unrelated claims are improperly joined, the court may dismiss them without prejudice. Fed. R. Civ. P. 21; 7 Alan Wright, Arthur Miller & Mary Kay Kane, Richard Marcus, Federal Practice and Procedure § 1684 (3d ed. 2012); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988) (affirming dismissing under Rule 21 of certain defendants where claims against those defendants did not arise out of the same transaction or occurrences, as required by Rule 20(a)). Unless the plaintiff can allege facts demonstrating his claims arose from the same incident, unrelated claims must be brought in separate actions.

Here, Plaintiff alleges that she was diagnosed with a heart issue in March 2020 and never received treatment for her condition. Plaintiff also alleges that CCWF deliberately ignored her existing conditions that made her more susceptible to contracting COVID, and her conditions are relevant to her assertion that she was labeled as a high risk individual. However, to the extent that Plaintiff seeks medical treatment for her heart condition or mental health services, her claims seeking such medical attention do not arise out of the same transaction or occurrences as her claims associated with COVID.

Plaintiff also complains that she did not have access to the telephones to communicate with her family, friends, and support members. She further alleges inhumane living conditions with no power, no self-controlled lights, pest contaminants, and trash left in rooms for six- to eight-hour periods. While these allegations may concern the overall conditions of her confinement, the inability to use the telephone does not arise from the same transactions or occurrences as the allegations concerning Plaintiff's exposure to and contraction of COVID.

Therefore, Plaintiff's claims seeking relief unrelated to COVID are improperly joined and must be dismissed under Rule 20(a).

## IV.   CONCLUSION

Upon careful review of Plaintiff's allegations, her complaint fails to state a claim on which relief may be granted. Plaintiff has not sufficiently alleged that any of the defendants violated the Eighth Amendment by the processing of CDCR 602 grievances related to COVID, her placement in a "high risk" medical category, and treatment for her heart condition. Based upon the facts alleged, the deficiencies cannot be cured by amendment, and further leave to amend would be futile. *See Lopez*, 203 F.3d at 1130; *Noll v. Carlson*, 809 F.2d 1446, 1448–49 (9th Cir. 1987).

Accordingly, the Court **RECOMMENDS** that:

1. Plaintiff's complaint be DISMISSED for failure to state a claim upon which relief can be granted; and
2. The Clerk of Court be directed to close the case.

The Clerk of Court is DIRECTED to randomly assign a district judge to this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 3, 2022**                        /s/ Gary S. Austin
                                                                  UNITED STATES MAGISTRATE JUDGE